KOEPCKE, Administrator, Appellant, vs. WISCONSIN BRIDGE & IRON COMPANY, Respondent.

*November 29—December 16, 1902.*

*Master and servant: Negligence: Personal injury: Contributory negligence: Assumption of risk: Infants: Immaterial error.*

1. An employee who was accustomed to cast off belts from pulleys, but who had never before removed the belt from the pulley at the point at which he was killed, attempted to do so while standing on two transverse pieces of timber, of respectively six and four inch surface, and at an elevation of nineteen feet from the floor, to which he had stepped from a twelve-inch plank, with a guard rail on its side, located on the side opposite the pulley. *Held*, that the employee assumed the risk, and was guilty of contributory negligence precluding recovery.

2. Assumption of risk is but a phase of contributory negligence, and it is immaterial whether the employee affected thereby be an adult or a minor.

3. It being shown that an employee assumed the risk incident to dangerous premises, there is nothing prejudicial in excluding evidence tending to show that in other parts of the premises, where similar work was required, a safer place was provided.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action to recover damages for the death of plaintiff's intestate on September 23, 1898, by negligence of the defendant, his employer, under the following circumstances: Albert Koepcke, then nineteen years old, had been employed for about a year in and about defendant's shops, where was manufactured structural iron and bridge work. For about two

months before the injury he had been employed as oiler, with the duty of oiling the bearings of the various shafts and machinery, and also with the duty of casting belts off from the pulleys on the main shaft, connecting with various machines which were not to run when the engine was kept in operation during the night. When so first employed, he had been shown how to do the work by his predecessor in that employment. There is no evidence that he was other than ordinarily intelligent; the only evidence being that, after the first week of such employment as an oiler, he had acquired familiarity with the work, and required no further instruction. On the night of the injury, at about ten minutes past six, for the first time in his service, it became necessary to cast off the belt connecting with a certain riveting machine from its pulley on the main shaft. That shaft extended through the shop at an elevation of approximately twenty feet from the ground, and under it, apparently furnishing its support, was a timber framework, consisting of a timber parallel to the shaft, six inches wide, crossed near the pulley in question by another timber four inches wide. The deceased, learning that this belt needed to be cast loose from the pulley by his predecessor as oiler, offered to go and do it, and was told by such predecessor to be careful, because it was a bad place to do any work. Deceased thereupon ascended a ladder to a sort of footway, consisting of a twelve-inch plank, apparently laid on the timber framework, and passed along the same parallel to the main shaft, and southward toward the pulley in question. That plank apparently had a hand rail, though this is not very clear in the evidence. Such plank terminated about eighteen inches from the pulley in question, and from that point the belt, which had to come off on the south side of the pulley, could have been pushed off, but the evidence shows that it was easier and customary to stand on the side of the pulley toward which a belt was to be thrown off; and the deceased, leaving the plank, stepped around the pulley to the

-south side thereof, and, standing at the intersection of the two timbers above described, undertook, by means of a stick as a lever, to pry the belt off toward him. While so doing he lost his balance and fell to the ground below, receiving injuries which resulted fatally in a few hours. There was light enough, so that one could readily see the whole situation. At the close of plaintiff's evidence, which consisted of that of a single witness, the court granted a motion for nonsuit, and later entered judgment thereon, from which the plaintiff appeals.

*Edgar L. Wood,* for the appellant.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

Dodge, J.   The peril to which plaintiff's decedent was subjected, from which he suffered, and which constituted the negligence charged upon the defendant, was that resulting from his standing upon two transverse timbers, respectively six inches and four inches of surface, at an elevation of nineteen feet above the ground, while he indulged in the exertion necessary to the prying of the belt from the pulley. It is difficult to conceive of a peril more obvious to the man of ordinary intelligence. The size of those timbers, the insecure foothold thereby afforded, and the danger of falling, either from slipping or loss of balance under the exertion necessary to the throwing of the belt, are matters completely within the common knowledge of all. These conditions had been before the eyes of the deceased for some two months, while his duties required him to move about upon this and similar scaffolding; but, whether they had or ought to have been noticed by him during that period, they were plain before his eyes at the moment when he exposed himself to them. When he stepped from the broader foothold and safeguarding railing, which were upon the north side of the pulley, around onto this less secure and unprotected place, he must have

done so with full knowledge or blind eyes. The effect of this view upon his right to charge his employer with liability for the ordinary and natural result of his act is so well settled, as matter of law, that it needs barely statement. He thereby assumed the risk of such result, and, whether there be or be not negligence on the part of the master in providing such appliances, his own contributory negligence in attempting to work under such circumstances must preclude recovery. *Helmke v. Thilmany,* 107 Wis. 216, 83 N. W. 360; *Hencke v. Ellis,* 110 Wis. 532, 86 N. W. 171.

Appellant urges upon us a somewhat philosophical discussion which may be found in some text-books, illustrated by decisions from various courts, involving the inquiry whether the doctrine of the employee's assumption of the risks known to him, as á defense to the employer's liability for negligence, rests upon contract or upon the idea of negligence in the employee; contending for the former view, and thereon predicating the deduction that, as deceased was legally a minor, he could not be bound by his own contracts. Such a discussion before this court is certainly academic. By a long line of cases it has become settled here that so-called assumption of the risk is but a phase of contributory negligence. Conceding that the employer negligently furnishes an unsafe place, the employee, who with knowledge consents to work therein, is himself guilty of negligence which is obviously as proximate a cause of any injury to him as is the maintenance of the place itself; hence he is precluded from recovery against his employer for those results. The citation of a few of the later cases may certainly relieve us from the necessity of a reconsideration of that subject: *Darcey v. Farmers' L. Co.* 87 Wis. 245, 58 N. W. 382; *Hazen v. West Superior L. Co.* 91 Wis. 208, 64 N. W. 857; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Dugal v. Chippewa Falls,* 101 Wis. 533, 77 N. W. 878.

Error is assigned on exclusion of testimony tending to

show that other places in the factory, where deceased had previously had occasion to cast off belts, were provided with twelve-inch planks to stand on, and a railing. From this ruling we can discover no prejudice to appellant. Whether or not it might have tended to prove the place of injury unusually or negligently dangerous, it in no way tended to overcome the undisputed fact that the situation was entirely obvious. If it served to prove or enhance defendant's negligence, it in no way tended to lessen that of the deceased, upon which the nonsuit was predicated, and is now approved.

*By the Court.*—Judgment affirmed.